IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LATRISHA A. WOODS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00218-BP |
| § | |
| TEAMSTERS LOCAL 767, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Defendant's Motion to Dismiss (ECF No. 40); Plaintiff's Reply and Brief in Support (ECF Nos. 44 and 45); Defendant's Reply (ECF No. 46); Plaintiff's Response (ECF No. 47); and Plaintiff's Request to Withdraw Response ECF No. 47 (ECF No. 48). After considering the pleadings and applicable legal authorities, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 40) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim under the Americans with Disabilities Act ("ADA") for failure to exhaust administrative remedies, **DISMISSES WITH PREJUDICE** her claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for failure to state a claim, **DENIES** Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(5) and as to Plaintiff's claim for breach of Defendant's duty of fair representation under the National Labor Relations Act ("NLRA"), and **DENIES** Defendant's Motion to Strike Jury Demand (ECF No. 40). Because of these rulings, the Court also **DENIES** Plaintiff's Request to Withdraw Response (ECF No. 48) as **MOOT**. The Court also lifts the stay of discovery that it entered pending disposition of Defendant's Motion to Dismiss.

**I.   BACKGROUND**

In this employment discrimination case, LaTrisha A. Woods ("Woods") sues her former union, the International Brotherhood of Teamsters Local Union No. 767 ("Union"). ECF No. 39. The following facts come from the Amended Complaint, and the Court accepts them as true for purposes of considering the Union's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002). Woods was an active member of the Union during her employment with United Parcel Service ("UPS"). *Id.* at 2. On May 1, 2015, a co-worker and fellow union member, Eddy Lefleur ("Lefleur"), assaulted Woods after her shift while she was waiting for her ride. *Id.* She immediately informed her Union steward, who instructed her to inform her UPS manager. *Id.* On May 4, 2015, Woods filed a formal complaint with UPS for sexual harassment against Lefleur. *Id.* at 3. During an investigation by UPS, Woods claims Lefleur attempted to gain favor with management, the Union, and other co-workers in an effort to disprove her complaint. *Id.* UPS determined Woods's complaint against Lefleur was unsubstantiated. *Id.* After discussions with her Union steward and UPS human resources manager, Woods filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 14, 2015. *Id.* at 2-3.

After she filed that complaint, Lefleur continued to verbally harass Woods by taking his breaks near her workstation and talking about her negatively to other UPS employees and Union members. *Id.* at 4. Woods again went to her Union steward, relayed her concerns to UPS, and advised UPS and the Union that Lefleur should not be allowed near her. *Id.* After Woods filed her claim, she was issued nearly ten notices of UPS's intent to discharge/suspend her, and she filed ten grievances over various concerns regarding Lefleur's conduct, targeted treatment by UPS managers, and the Union's response. *Id.* The Union replaced her steward with Lefleur and gave

her the option of dealing with him or another person "who was outspoken as to her dislike for" her as her steward. *Id.*

On August 6, 2015, Woods suffered an anxiety attack and left the workplace by ambulance. *Id.* at 5. On August 18, 2015, Woods was informed that she was no longer employed at UPS for failing to timely file a grievance for a write up following an absence on July 10, 2015. *Id.* On July 14, 2015, Woods filed a grievance for harassment against her UPS manager, specifically stating that she was "over supervised and written up for being out for a work-related injury." ECF No. 44-4 at 1. Woods alleges that the Union concealed the information that UPS only had until August 11, 2015, to terminate her for not filing a grievance, but waited until after that date to terminate her. ECF No. 39 at 5. A hearing for Woods to retain employment was set on November 10, 2015, in Florida. *Id.* Woods voiced concerns that she would not be able to attend the hearing due to her health and lack of funds to travel to Florida. *Id.* She requested an accommodation, but this request was denied. *Id.* Woods alleges that a male employee who was fired within four days of her for the same reasons had his hearing in Texas, while hers was held in Florida. *Id.* at 6. Additionally, Woods claims that the male employee was granted his position back with UPS, while she was not. *Id.*

Woods asserts that the Union violated Title VII by discriminating against her due to her sex and creating a hostile working environment. *Id.* at 7-8. Further, she alleges that the Union retaliated against her because she filed a charge of discrimination against her employer and the Union. *Id.* at 8. She asserts the Union violated the ADA by retaliating against her for requesting a reasonable accommodation due to health issues during her grievance hearing. *Id.* at 9. Finally, although not stated specifically, she alleges facts to support a claim that the Union breached its duty of fair representation under the NRLA. *Id.* at 4-6.

In its Motion to Dismiss, the Union urges dismissal of Woods's Amended Complaint because she failed to timely effect service of process. ECF No. 40 at 2. The Union further asserts that the Amended Complaint fails to state a claim. *Id.* Specifically, the Union argues that Woods failed to exhaust her administrative remedies for her Title VII and ADA claims; did not allege sufficient facts to support those claims; and does not allege sufficient facts to support her claim that the Union breached its duty of fair representation. ECF No. 40-1 at 22-27. Finally, the Union argues that if the Court does not dismiss the Amended Complaint in its entirety, the Court should strike Woods's jury demand as untimely under Federal Rule of Civil Procedure 38(d). *Id.* at 2.

Woods argues that the Court may rely on all the information she provided to the EEOC, including emails, to determine whether she exhausted her administrative remedies, not just the formal EEOC Charge of Discrimination she filed on May 14, 2015. ECF No. 44 at 3. She further alleges that she notified the Union of her disability through various forms of communication. *Id.* Finally, she claims that the Union failed to adequately represent her because it "willfully allowed UPS termination to be upheld." *Id.*

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(5)

Rule 12(b)(5) "permits a challenge to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint." *Neely v. Khurana*, No. 3:07-cv-1344-D, 2008 WL 938904, at *2 (N.D. Tex. Apr. 7, 2008); Fed. R. Civ. P. 12(b)(5). A district court may dismiss a case without prejudice under Federal Rule of Civil Procedure 4(m) for failure of a plaintiff to effect service on defendants within ninety days of filing the complaint. *See, e.g.*, *Davis v. Bank of Am., NA*, No. 3:12-cv-1036-M (BF), 2012 WL 4795591 (N.D. Tex. Oct. 9, 2012); *cf. Drgac v. Treon*, No. H-07-4283, 2008 WL 4746984, at *1 (S.D. Tex. Oct. 27, 2008) ("A *pro se* plaintiff is

4

entitled to notice before a district court dismisses an action, *sua sponte*, for failure to timely serve the defendants under Rule 4(m) .... [But] *pro se* status and ignorance of the law do not constitute cause for [plaintiff's] failure to effect service in compliance with the rules." (citing *Lindsey v. United States R.R. Ret. Bd.*, 101 F.3d 444, 446 (5th Cir. 1996); *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988))).

To complete service of process in federal court, a plaintiff must first present a summons to the clerk of the court, which the clerk in turn "must sign, seal, and issue ... to the plaintiff for service on the defendant." Fed. R. Civ. P. 4(b). If a defendant is not served within ninety days after the complaint is filed, the court—on a motion or on its own, after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Systems Signs Supplies v. United States Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990). To establish good cause, a plaintiff must demonstrate "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id.* (citation omitted). When considering an extension of time to perfect service, the court "must first determine whether good cause exists. If good cause is present, [it] *must* extend time for service. If good cause does not exist, the court *may*, in its discretion, decide whether to dismiss the case without prejudice or extend time for service." *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) (citation omitted).

      **B.**      **Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each complaint contain "a short and plain statement of the

claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be

dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction"). Nonetheless, courts may appropriately dismiss an action with prejudice if a court finds that the plaintiff has alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). Moreover, courts may dismiss an action with prejudice if the defendant is entitled to absolute immunity because the "plaintiff will never have a claim against the defendant based on the particular facts alleged." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

### C. *Pro se* pleading standards

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*

## III. ANALYSIS

### A. Union's Motion to Dismiss under Rule 12(b)(5) is denied.

The Union argues that Woods's Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) because she did not effectuate service of process within ninety days of filing her complaint. ECF No. 3. A review of the docket reveals that Woods was not delinquent in effecting service on the Union.

Woods filed her Complaint and a Motion to Proceed *in Forma Pauperis* on January 18, 2018. ECF Nos. 3 and 4. United States Magistrate Judge David L. Horan granted her Motion on January 22, 2018. ECF No. 6 at 1. In his Order, Judge Horan explained that the Court was conducting screening under 28 U.S.C. § 1915(e)(2)(B), and that "service of process shall not issue, if at all, until the Court completes its screening of the complaint." *Id.* Judge Horan entered his Findings, Conclusions, and Recommendation that Woods's case be transferred to the Fort Worth Division on February 22, 2018, and Senior United States Judge Sam R. Cummings adopted Judge Horan's recommendation, transferring the case on March 19, 2018. ECF Nos. 9 and 10. The Clerk of Court assigned a new case number and issued a form notifying Woods of her right to consent to proceed before a United States Magistrate Judge and a form containing instructions for non-prisoner *pro se* plaintiffs, such as Woods. ECF Nos. 11 and 12.

Nothing happened thereafter until October 16, 2019 when the Clerk of Court issued another consent to proceed before United States Magistrate Judge form and made a docket entry indicating that the case was preliminarily assigned to the undersigned. On February 25, 2020, the undersigned required the Clerk to deliver summons forms and a copy of the Order to Woods, and the Court directed her to return the forms to the Clerk for issuance. ECF No. 14.  Woods returned the summons form to the Clerk on March 23, 2020. ECF No. 15.

On that same day, the Clerk issued summons to the Union and delivered a copy of the summons, USM 285 Form, and a copy of the Complaint to the United States Marshals Service ("USMS"). ECF No. 16. The USMS did not serve process on the Union until April 22, 2020. ECF No. 17. Twenty-seven days passed between the Court's February 25, 2020 order and the issuance of the summons. Fifty-seven days passed between the February 25 order and when the USMS effected service.

However, 825 days passed between the date Woods filed her initial Complaint and when service was effected. Because she is proceeding *in forma pauperis*, Woods was entitled to rely upon the court to "issue and serve all process and perform all duties in [*in forma pauperis*] cases." *Lindsey,* 101 F.3d 446 (citing Fed. R. Civ. P. 4(c)(2)). Likewise, Judge Horan in his order dated January 22, 2018 informed her that "service of process shall not issue, if at all, until the Court completes its screening of the complaint under 28 U.S.C. § 1915(e)(2)(B)." ECF No. 6. The Court did not grant that permission until the undersigned's order of February 25, 2020. ECF No. 14. It is unclear why it took so long for the Union to be served with process. However, there is no evidence before the Court proving that Woods was responsible for the delay. As a result, she should not be penalized for the delay in service, and the Union's Motion to Dismiss under Rule 12(b)(5) is denied.

### B. Woods's ADA claims must be dismissed for failure to exhaust administrative remedies.

The Union argues that Woods's claims under the ADA should be dismissed pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies. In support of its argument, the Union points to the Charge of Discrimination that Woods filed with the EEOC, which is attached to the Union's Motion as Exhibit 1. ECF No. 40-3 at 4. The Court considers this exhibit part of the pleadings because it directly relates to the charges made in the Amended Complaint and the right to sue letter attached. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]").

In the Charge of Discrimination, Woods checked the boxes for discrimination based on sex and retaliation. ECF No. 40-3 at 4. She stated that on April 25, 2015 she was sexually harassed by Lefleur. Id. She also stated that on May 1, 2015, Lefleur initiated unwanted sexual contact, and

9

she reported him to UPS human resources and the Union steward. *Id.* She stated that UPS human resources and the Union failed to correct the actions, and they did not provide reasons for not doing so. *Id*. She stated she believed that she was discriminated against because of her "sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.*

The Union is correct that Woods failed to allege that she properly exhausted her administrative remedies regarding her ADA claims. If "an employee timely files an EEOC charge and receives a right to sue notice from the EEOC, the employee may pursue only those claims that can 'reasonably be expected to grow out of the charge of discrimination.'" *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). "An employee's failure to include a claim in [her] EEOC charge prevents the employee from suing on that claim, unless what was in the charge would have led the EEOC to investigate and would have put the employer on notice that [the employee] would be pursuing that claim." *Goswami v. Unocal*, No. H-12-2953, 2013 WL 5520107, at *7 (S.D. Tex. Oct. 3, 2013).

Both in the boxes that she checked in the Charge, and in her description of the Union's alleged discrimination, Woods failed to assert any facts that would tend to prove a violation of the ADA, which makes it illegal for an employer to discriminate against employees or applicants because of their disabilities. 42 U.S.C. § 12101 (2009). Woods's Charge of Discrimination would not put the EEOC or the Union on notice that she complained of violations of this act. Neither the EEOC nor the Union would expect that an ADA claim of disability discrimination growing out of her grievance and the process for hearing that grievance would arise from her the actions mentioned in her EEOC claim. ECF No. 39 at 5-6. Accordingly, Woods's claim under ADA is dismissed.

Ordinarily, a dismissal for failure to state a claim under Federal Rule 12(b)(6) is a ruling on the merits of a case and would be with prejudice. *Csorba v. Varo, Inc.,* 58 F.3d 636, 636 (5th Cir. 1995) (per curiam) (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977)). This seems especially true here where Woods likely cannot remedy this situation by filing another Charge of Discrimination and attempting to exhaust her administrative remedies at this time. As noted previously, the Committee Hearing was held on November 10, 2015, and more than 300 days have passed since the last date on which the Union could have violated her rights under ADA. *See E.E.O.C. v. Rock-Tenn Servs. Co., Inc.*, 901 F. Supp. 2d 8109, 822 (N.D. Tex. 2012) ("Title VII requires that an employee file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory practice"); *see also* 42 U.S.C. § 2000e-5(e)(1). However, "[w]hen a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 n. 5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't,* 127 F.3d 470, 478 (5th Cir. 1997); *Stroy*, 896 F.3d at 698 n.2; *Crawford v. Tex. Army Nat'l Guard,* 794 F.2d 1034, 1035, 1037 (5th Cir. 1986)). Accordingly, Woods's ADA claims are dismissed without prejudice.

    **C.**     **Woods's Title VII claims must be dismissed for failure to state a claim upon which relief can be granted.**

The Union further argues that Woods failed to satisfy the *Twombly* pleading standard in her Title VII and ADA claims. ECF No. 40-1 at 21-22. Because Woods failed to exhaust her administrative remedies regarding her ADA claim, the Court will address only the Motion as it relates to her remaining claims under Title VII.

11

       *1.*      *Woods does not state a claim for sex discrimination under Title VII.*

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Administrative exhaustion "occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue," *Taylor*, 296 F.3d at 379, or when she "files a timely charge with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao*, 96 F.3d at 789.

The plaintiff "must file a charge of discrimination with the EEOC within 180 days of the date of the alleged discrimination, or within 300 days of the alleged discrimination if [she] institutes [her] action with the appropriate state agency" and "receives a statutory notice of right to sue." *Owens v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:16-CV-3162-L, 2017 WL 3190727, at *2 (N.D. Tex. May 16, 2017) (citing *Dao*, 96 F.3d at 789; 42 U.S.C. § 2000e-5(e)(1)); *see also Gonzales v. Pan Am. Labs, L.L.C.*, No. 3:14-CV-2787-L, 2015 WL 5731289, at *2 (N.D. Tex. Sept. 29, 2015) (citing *Taylor*, 296 F.3d at 378-79).

Under Title VII, the plaintiff has ninety days to file a civil action after she receives her right to sue letter from the EEOC. *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982) (citing 42 U.S.C. § 2000e-5(f)(1) (1994)). The courts strictly construe the ninety-day deadline for filing suit, and courts in the Fifth Circuit "have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired." *Taylor*, 296 F.3d at 379. Filing an EEOC charge is not a requirement for the Court to have jurisdiction, but it "is a precondition to filing suit in district court." *Dao*, 96 F.3d at 789.

Here, Woods administratively exhausted her Title VII claim because she timely filed a Charge of Discrimination with the EEOC on May 14, 2015, which was within 180 days of April

25, 2015 and May 1, 2015, the dates when the Union "failed to correct the actions" of UPS. ECF No. 40-3 at 4. In her Charge of Discrimination, Woods alleges that UPS "discriminated against [her] because of [her] sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* The EEOC issued Woods a notice of right to sue letter on October 31, 2017 based upon these allegations. *Id.* at 6. Woods then initiated this lawsuit on or before the ninety-day statutory filing deadline for a Title VII claim. ECF No. 3. Therefore, Woods administratively exhausted her Title VII claims.

"In analyzing discrimination claims under Title VII, the ADEA, and the ADA, courts in the Fifth Circuit apply the analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Goswami*, 2013 WL 5520107 at *5. "The first step requires the plaintiff to make a *prima facie* showing of discrimination." *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802; *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). In a Title VII case, the plaintiff does this by showing that she: "(1) [is a member] of a protected group or class; (2) [is] qualified for [her position]; (3) suffered [an] adverse employment [action]; and (4) similarly situated individuals outside the protected class were treated more favorably." *Moore v. True Temper Sports, Inc.*, No. 1:10-CV-178-NBB-DAS, 2011 WL 4498882, at *2 (N.D. Miss. Sept. 27, 2011).

A plaintiff asserting violations of Title VII need not make a showing of each element of her prima facie case at the pleading stage. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). However, the plaintiff "must set forth allegations that would enable the court to reasonably infer that [her] employer or employment agency discriminated against [her] . . . ." *Thornton v. Dallas I.S.D.*, No. 13-CV-3012-P, 2014 WL 46398, at * 3 (N.D. Tex. Jan. 6, 2014).

13

Here, Woods's claims of discrimination do not properly state a claim for violations of Title VII. Woods does not allege in the Amended Complaint specific facts to demonstrate an adverse action against her on the part of the Union. *See* ECF No. 39. Woods does allege that the Union handled her grievance in a different manner from a male employee whom UPS fired within four days for the same reasons and whose employment was reinstated. *Id.* at 6. However, she does not allege facts that demonstrate that his circumstances were nearly identical to hers or that they were similarly situated in any material respect, other than the temporal proximity of the terminations and nature of the hearings. *See* ECF Nos. 39, 44, 45. Woods alleges only that she suffered an adverse employment action because the Union did not adequately represent her in the post termination hearing process with UPS, as evidenced by the outcomes of the two hearings. ECF No. 39 at 4-6. However, Woods does not bridge the causal link between her termination and the Union's allegedly discriminatory practices. For this reason, Woods's claim of discrimination based on sex against the Union does not satisfy the *Twombly* standard and is dismissed.

        2.      *Woods does not State a Claim of Retaliation under Title VII.*

In analyzing retaliation claims under Title VII, a plaintiff must plead that "(1) she engaged in activity protected by Title VII, (2) she suffered a materially adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action*." Jenkins v. City of San Antonio Fire Dep't,* 784 F.3d 263, 269 (5th Cir. 2015). A labor organization such as the Union cannot discriminate against any member "because [s]he has opposed any practice made an unlawful employment practice by [Title VII] or... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a)); *Warner v. Lear Corp.*, No. 3:15-CV-1878-D, 2016 WL 339606, at *4-5 (N.D. Tex. Jan. 28, 2016) (court dismissed plaintiff's Title VII retaliation claim against a labor union for

failure to allege "specific facts, showing the casual link between the protected activity and the adverse employment action").

Woods's claims of retaliation do not properly state a claim against the Union. As with her sex discrimination claim, Woods does not allege in the Amended Complaint specific facts to demonstrate a protected activity and an adverse action against her on the part of the Union. *See* ECF No. 39. Woods only alleges that she suffered an adverse employment action because the Union did not adequately represent her in the post termination hearing process with UPS. *Id.* at 4-6. This does not state a causal link between any protected activity and the Union's representation in her grievance hearing or any other action taken against her by the Union. For this reason, Woods's retaliation claim under Title VII does not satisfy the *Twombly* standard and is dismissed.

The Court dismisses Woods's claims under Title VII with prejudice because it is convinced that Woods has stated her best, though legally insufficient, case for employment discrimination against the Union. She has had numerous opportunities to state a claim against the Union for sex discrimination or retaliation. She responded to Magistrate Judge Horan's Questionnaire. *See* ECF No. 8. She amended her complaint. *See* ECF No. 39. She vigorously opposed the Union's motion to dismiss her original complaint and argued her opposition in an oral telephonic hearing before the Court. *See* ECF Nos. 28, 29, 33, and 38. She has filed detailed responses to the Union's Motion to Dismiss at issue. ECF No. 44, 45. She attempted to file a sur-reply, which she later requested to withdraw because it was not proper to be filed. ECF No. 47 and 48. With the facts available in this case, the Court concludes that Woods has stated her claims to the best of her ability, and dismissal of those claims should be with prejudice.

### D. Woods asserts a claim under the NLRA.

In her Amended Complaint, Woods states that the Union "failed to meet its legal and contractual obligations" as to the collective bargaining agreement between the Union and UPS. ECF No. 39 at 1. Although Woods does not explain her claim against the Union for failure to meet this duty in great detail, she does allege facts that support a viable claim under the NLRA at this stage of the case.

A union breaches its statutory duty of fair representation when its "conduct toward a member of the collective-bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Negligence or a mistake in judgment does not breach the duty of fair representation, rather "the critical question is whether a union's conduct was arbitrary, discriminatory, or in bad faith, such that it undermined the fairness or integrity of the grievance process." *McCall v. Southwest Airlines Co.*, 661 F. Supp. 2d 647 (N.D. Tex. 2009) (citing *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989) (internal citations and quotation marks omitted)). Union error is "arbitrary if it reflects a reckless disregard for the rights of the individual employee." *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985).

Woods alleges that the Union failed to adequately represent her throughout her time at UPS after her initial complaint against Lefleur. ECF No. 39. Woods alleges that the Union concealed information pertinent to her termination and grievance hearing. *Id.* at 5. She claims that the Union "took steps to make sure she would not be able to participate in the post termination hearing process." *Id.* at 5-6. She asserts that the Union failed to interview her before the grievance hearing. ECF No. 45 at 3-4. Finally, she argues that she filed a timely grievance in response to UPS's Intent to Discharge. *Id.* at 4.

The Union argues that Woods's claims are conclusory allegations that fail to allege the Union's "conduct with regard to Plaintiff's grievance was arbitrary, discriminatory, or in bad faith, or outside the bounds of reasonableness." ECF No. 40 at 27. Liberally construed, as the Court must with the pleadings of a *pro se* party such as Woods, the Amended Complaint appears to state a claim for the Union's violation of its duty of fair representation sufficient to withstand a motion to dismiss under Rule 12(b)(6). Accordingly, the Court denies the Union's Motion to Dismiss Woods's claim for breach of the Union's duty of fair representation under the NRLA.

### E. Woods's Request for Motion for Jury Trial is Timely.

The Union argues that Woods's demand for a jury trial is untimely because the Amended Complaint does not contain any "new issues" raised and thus is untimely under Federal Rule of Civil Procedure Rule 38(b). ECF No. 40-1 at 29. However, on January 18, 2018 when Woods filed her Original Complaint, she included a jury demand. *See* ECF No. 3 at 2. Her Complaint included the following language "TITLE: COMPLAINT AND DEMAND FOR JURY TRIAL." *Id.*

Under Rule 38(b) "on any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served..." Fed. R. Civ. P. 38(b)(1). Because Woods demanded a jury trial in her original pleading, the demand is timely. The Court will issue an amended scheduling order by separate filing that includes deadlines for a jury trial commencing on the same date and time as the non-jury trial setting currently entered.

### IV. CONCLUSION

For these reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 40) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's ADA claim for failure to exhaust her administrative remedies, **DISMISSES WITH PREJUDICE** her

17

Title VII claims for failure to state a claim, **DENIES** Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(5) and as to the Plaintiff's claim for breach of Defendant's duty of fair representation under the NLRA, and **DENIES** Defendant's Motion to Strike Jury Demand (ECF No. 40). As a result of these ruling, the Court also **DENIES** Plaintiff's Request to Withdraw Response (ECF No. 48) as **MOOT**.

The discovery stay entered on July 24, 2020 is hereby **LIFTED**, and the parties may proceed to conduct the discovery necessary to prepare this case for jury trial of the issues properly presented.

It is so **ORDERED** on October 22, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE